## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

LAMAR COLEMAN,                       :        CIVIL ACTION NO. 3:CV-14-0415

         Petitioner          :        (Judge Nealon)

      v.                            :

                                  :        **FILED**
UNITED STATES                        :        **SCRANTON**
PAROLE COMMISSION,                   :
                                  :        AUG 2 7 2014
         Respondent          :        PER _____
                                          DEPUTY CLERK

## MEMORANDUM

On February 25, 2014, Lamar Coleman, an inmate confined at the Allenwood Federal Correctional Institution, White Deer, Pennsylvania, filed the above captioned action pursuant to 28 U.S.C. § 2241 in the United States District Court for the Eastern District of Michigan. (Doc. 1). In his petition, Coleman claims that his 1974 criminal sentence has expired in full, and that the United States Parole Commission ("Parole Commission") therefore lacks jurisdiction over him. Id. His theory for the expiration of that sentence is that the good conduct time credits he earned prior to his mandatory release reduced the amount of time he owed on that sentence, specifically, that the good time credit commuted the sentence. Id.

By Order dated March 5, 2014, the Michigan District Court found that it lacked jurisdiction to hear Coleman's claims because he did not reside within the

Eastern District of Michigan, and, therefore, transferred the action to the Middle

District of Pennsylvania. (Doc. 3, Order).

After receiving Petitioner's motion to proceed in forma pauperis on

March 31, 2014, the Court issued a show cause Order on April 3, 2014. (Doc. 8,

Order). On April 23, 2014, a response was filed, (Doc. 10, Response), and on May

12, 2014, Petitioner filed a traverse. (Doc. 11). The petition is ripe for disposition,

and for the reasons set forth below, the petition will be dismissed for Petitioner's

failure to exhaust administrative remedies.

I. **Background**

On May 9, 1974, Coleman was sentenced by the United States District

Court for the Eastern District of Michigan to a 12-year term of imprisonment for

Armed Bank Robbery. (Doc. 10-1 at 4, Sentence Monitoring Computation Data).

On May 22, 1980, following an initial parole hearing, the Parole

Commission ordered that Coleman serve to the expiration of his sentence (i.e., to the

date on which he is required to be released under 18 U.S.C. § 4163, the full term date

less accumulated good time credits). (Doc. 10-1 at 6-10, Parole Commission Hearing

Summary; Notice of Action).

On June 19, 1987, Coleman was mandatorily released, subject to

supervision "as if on parole" pursuant to 18 U.S.C. § 4164 to his full term date less

180 days, or January 30, 1991. (Doc. 10-1 at 11, Certificate of Mandatory Release).

On June 28, 1988, the Parole Commission issued a warrant charging Coleman with Armed Robbery and Possession of a Firearm in Commission of a Felony, Failure to Report an Arrest, and Unauthorized Possession of a Firearm. (Doc. 10-1 at 13, Warrant Application and Warrant). Because Coleman was already in the custody of state authorities for the robbery, the Parole Commission instructed the United States Marshals Service to place its warrant as a detainer. (Doc. 10-1 at 16, Memorandum).

On December 28, 1988, the Parole Commission supplemented its warrant with the information that Coleman had been convicted of Armed Robbery, Felony Firearm Possession, and being a Habitual Offender, and that he had been sentenced to an aggregate 60-year sentence. (Doc. 10-1 at 17, Supplement to Warrant Application.)

In February, 1989, the Parole Commission undertook an on-the-record review of the detainer. (Doc. 10-1, Feb. 21, 1989 letter). Following that review, the Parole Commission ordered that the detainer stand. (Doc. 10-1 at 19, Notice of Action.)

On May 29, 2013, Coleman was released from service of his new state sentence to the detainer issued by U.S. Parole Commission for violations of his

federal parole.  (Doc. 10-1 at 20, July 1, 2013 letter).

On November 18, 2013, the Parole Commission conducted a mandatory release revocation hearing.  (Doc. 10-1 at 21, Hearing Summary).  Following that hearing, by Notice of Action dated December 31, 2013, the Parole Commission revoked Coleman's parole, and ordered that he receive no credit for time spent on parole, and that he serve to the expiration of his violation term.[1]  (Doc. 10-1 at 23, Notice of Action).

On February 25, 2014, Petitioner filed the instant action, challenging the Parole Board's actions.  (Doc. 1, petition).

On March 10, 2014, Coleman filed an administrative appeal from the December 31, 2013, Notice of Action.  (Doc. 10-1 at 33, Administrative Appeal).

## II.  Discussion

"Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996); see also Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) ("[W]e have consistently applied an

---

1.    A computation of Coleman's sentence by the BOP indicates that his current projected release date, via mandatory release, is March 1, 2016. (Doc. 10-1 at 41, Sentence Monitoring Computation Data).

exhaustion requirement to claims brought under § 2241."). Thus, a person is not entitled to judicial relief until the prescribed administrative remedy has been fully exhausted. See Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2384-85, 165 L.Ed.2d 368 (2006). The Third Circuit Court of Appeals has followed the exhaustion doctrine for several reasons: "(1) judicial review may be facilitated by allowing the appropriate agency to develop a factual record and apply its expertise, (2) judicial time may be conserved because the agency might grant the relief sought, and (3) administrative autonomy requires that an agency be given an opportunity to correct its own errors." Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981) (internal citations omitted).

In order for Petitioner to show that he properly exhausted his administrative remedies, he must meet his burden of proof and illustrate that he completed all available administrative review procedures before seeking habeas corpus relief. See U.S. Ex. rel. Sanders v. Arnold, 535 F.2d 848, 850 (3d Cir. 1976) (finding that the prisoner failed to exhaust administrative remedies because he did not complete administrative appeals process prior to filing habeas petition). In Sanders, the petitioner was first convicted of counterfeiting and sentenced to a three-year prison term. See id. at 849. While on parole, he was convicted for conspiracy to pass counterfeit money and sentenced to a seven-and-a-half year prison term to run

concurrently with his first sentence.  See id.  More than two years later, Mr. Sanders was paroled on his second sentence "to actual physical custody of detainer only," and the United States Board of Parole ("Board") simultaneously executed a parole violator's warrant for the first sentence.  See id.  Thus, he effectively remained in federal detention but shifted from serving the second sentence to serving the first. Instead of administratively appealing the parole "to actual physical custody of detainer only" or appealing the execution of the warrant, Mr. Sanders filed a habeas corpus petition challenging his continued incarceration.  See id.  The Third Circuit Court of Appeals found that his failure to appeal constituted a failure to exhaust administrative remedies and remanded the case, instructing the District Court to deny the habeas petition.  Id.

As noted above, the Petitioner in the instant case challenges the Parole Commission's December 31, 2013 Notice of Action, claiming that the Parole Commission lacks jurisdiction over him because he fully served his 1974 sentence. (Doc. 1, petition).  However, the Commission informed him that his time spent on parole would not be credited and that his parole was revoked.  (Doc. 10-1 at 23, Notice of Action).  Petitioner, like Sanders, however, did not appeal the Commission's determination before filing his petition for writ of habeas corpus. Petitioner's failure to appeal constitutes a failure to exhaust administrative remedies.

Pursuant to 28 C.F.R. § 2.26(a)(1), "[a] prisoner or parolee may submit to the National Appeals Board a written appeal of any decision to grant (other than a decision to grant parole on the date of parole eligibility), rescind, deny, or revoke parole ...." (2008). The appeal must be filed within thirty (30) days from the date of the decision. See id. at § 2.26(a)(2). The National Appeals Board has sixty (60) days to decide an appeal. See id. at § 2.26(c).

If the petitioner fails to file a timely appeal, or commits any other procedural default and the default renders unavailable the administrative process, a court can not review his habeas claim unless he demonstrates cause and prejudice. See Moscato, 98 F.3d at 761 (finding that when the petitioner's appeal was late merely because of his dilatoriness, the petitioner did not show cause for the default); see also 28 C.F.R. § 2.26(d) (2008) ("If no appeal is filed within thirty days of the date of entry of the original decision, such decision shall stand as the final decision of the Commission."). Where the petitioner fails to show cause, the court does not need to address the question of actual prejudice. See Moscato, 98 F.3d at 762 (declining to address prejudice prong because the petitioner did not show cause).

In the instant case, Petitioner was informed on January 17, 2014, that by Notice of Action dated December 31, 2013, his parole was revoked and his time spent on parole would not be credited. See (Doc. 10-1 at 29). The notice explained that the

action was appealable to the National Appeals Board under 28 C.F.R. § 2.26 and must be filed with the Commission within thirty (30)days. Id. According to the record, Petitioner did not file an appeal contesting the Commission's decision until after filing the instant petition for writ of habeas corpus. Petitioner has not asserted any reason for his failure to file a timely appeal. In his traverse, Petitioner attempts to argue that the affidavit attached to his appeal reflects the date of February 14, 2014, indicating that it was mailed to the Parole Commission prior to the February 25, 2014 file date of the instant action. (Doc. 11 at 2, traverse). Even crediting Petitioner's argument, his petition is still not timely. The National Appeals Board had sixty (60) days to decide his appeal, and Coleman's federal petition was filed well before the 60-day time frame expired. Thus, he has not provided any grounds upon which his failure to file a timely appeal can be excused, and has not satisfied his burden of proving that he exhausted his administrative remedies **prior** to filing his federal habeas petition.

Regardless of exhaustion, Coleman's petition is meritless. He claims that the good conduct time he earned on his 1974 sentence, prior to his mandatory release, should be applied to reduce the amount of time he owes on that sentence and would, in effect, commute the sentence. (Doc. 1, petition).

Under 28 C.F.R. § 2.35(b), good time credit is "used up" when a prisoner is released on parole and, thus, has no effect on a prisoner's term of imprisonment in the event of parole revocation. <u>Otto v. Warden, FCI-Allenwood</u>, 209 Fed. App'x 149, 152 (3d Cir. 2006) (citing <u>Boniface v. Carlson</u>, 856 F.2d 1434, 1436 (9th Cir. 1988)). <u>See</u> <u>also</u> <u>Bailey v. Southerland</u>, 821 F.2d 277, 278-79 (5th Cir. 1987) (finding that "under 28 C.F.R. § 2.35(b), the good time of one confinement does not carry over to a second confinement."); <u>Booth v. United States</u>, 996 F.2d 1171, 1173 (11th Cir. 1993).[2]

Coleman argues that because § 2.35(b) was instituted in 1985, after his conviction, it does not apply to his situation.  However, under the policy in effect at the time of Coleman's conviction, a parole violator could still lose all of the good time credit that he had accumulated prior to being released on parole, but only if he was given notice of the possibility of forfeiture during his revocation proceeding. <u>See</u> <u>Paroling, Recommitting and Supervising Federal Prisoners</u>, 50 Fed. Reg. 46282, 46282-83 (final action Nov. 7, 1985) (codified at 28 C.F.R. § 2.35) (supplemental information); <u>Boniface v. Carlson (Boniface II)</u>, 881 F.2d 669, 671 (9th Cir. 1989).

---

2.    Every Circuit that has considered the question has upheld § 2.35(b) as a permissible construction of the good time statutes. <u>E.g.</u>, <u>Patterson v. Knowles</u>, 162 F.3d 574, 575-76 (10th Cir. 1998) (collecting cases).

Section 2.35(b) made the effective loss of previously accumulated good time credit automatic, obviating any need for notice in the warrant. The only difference in Coleman's case is that, pursuant to § 2.35(b), the parole violator warrant did not state that he would no longer benefit from his previously accumulated good time credit in the event of revocation. However, because § 2.35(b) did not actually change the policy governing the loss of good time credits, Coleman would not have retained the benefit of the good time credit that he had accumulated before his release in 1987 even in its absence. See id. He provides no evidence of any likelihood that, in the absence of § 2.35(b), he would have retained any of his previously accumulated good time credit. Thus, his claim that he has served his entire 12-year sentence on the ground that it was shortened by his accumulated good conduct time credits lacks merit.

## III. Conclusion

Accordingly, because Petitioner did not timely appeal the Commission's refusal to credit his new sentence with previously earned good time credit, he did not exhaust his administrative remedies, and his habeas petition will be dismissed.

A separate Order will be issued.

Dated: August 27, 2014

_____
United States District Judge